UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ROBERT SCOTT BATCHELAR,** Individually and on behalf of all others similarly situated, | : : : : | **CIVIL ACTION NO.** |
| Plaintiff, | : : | 3:15-CV-01836 (VLB) |
| v. | : : | |
| **INTERACTIVE BROKERS, LLC, INTERACTIVE BROKERS GROUP, INC.,** and **THOMAS A. FRANK,** | : : : : | |
| Defendants. | : | September 28, 2016 |

**MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT [DKT. 28]**

I.   Introduction

Plaintiff, an online stock trader, brings this putative class action against defendants Interactive Brokers LLC ("Interactive"), Interactive Brokers Group, Inc. ("IBG"), and Mr. Thomas A. Frank ("Frank," and collectively with Interactive and IBG, the "Defendants"), alleging that Defendants' online brokerage platform improperly liquidated positions in Plaintiff's margin trading account when Plaintiff's account failed to meet Defendants' margin requirement. Plaintiff has asserted causes of action for negligence (Count I) and breach of contract (Count II).

Defendants have jointly moved to dismiss Plaintiff's Complaint in its entirety for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). [Dkt. 28]. For the reasons that follow, Defendants' Motion to Dismiss is GRANTED.

1

II.     **Factual Background**

The following facts and allegations are taken from the Complaint.

Plaintiff Robert Scott Batchelar is a Massachusetts resident and is an online stock trader who opened and used an account with Interactive. [Compl. ¶ 3].

Defendant Interactive Brokers LLC ("Interactive") is a limited liability company formed in the State of Connecticut and is a subsidiary of Interactive Brokers Group, Inc. ("IBG"), a Delaware corporation with its principal place of business in Connecticut. [*Id.* ¶¶ 4, 5]. Defendant Thomas A. Frank is a resident of Connecticut and is the Chief Information Officer and Executive VP of IBG. [*Id.* ¶ 21].

Interactive is a federally-licensed securities and commodity futures broker. Both parties describe Interactive as a "deep discount online brokerage firm," because, according to Interactive, its customers "decide on their own investment strategy," without advice from Interactive, and send their trading orders to Interactive over the internet. [*Id.* ¶ 7; Def. Mem. at 3]. Interactive executes the trade orders received from its customers using proprietary software. [Compl. ¶¶ 10, 11].

Interactive also offers margin trading, through which customers can purchase and sell positions that are secured by the collateral in the customer's account. [I*d.* ¶ 12]. Customers who engage in margin trading must meet a margin requirement calculated by Interactive's software. [*Id.* ¶ 13]. The software continuously compares the margin account requirement with the net liquidating

value ("NLV") of the customer's account.  [*Id.* ¶ 14].  If a customer's NLV drops below that customer's margin requirement, a margin deficiency occurs.  When a margin deficiency occurs, Interactive's software engages an auto-liquidation function that liquidates certain positions in the customer's account using an algorithm (the "liquidation algorithm").  [*Id.* ¶ 16].

Upon opening his margin account with Interactive, Plaintiff "entered into [Interactive's] "standardized contract."  [*Id.* ¶ 24].  Defendants attached a copy of Plaintiff's Interactive Customer Agreement (the "Customer Agreement") referenced in the Complaint as an exhibit to the Motion to Dismiss.  [*See* Dkt. 28, Ex. B.].  The Customer Agreement provides that Interactive "is authorized to liquidate account positions in order to satisfy Margin Requirements without prior notice."  [*Id.* § 11(C)].

The Customer Agreement also grants Interactive broad discretion in the liquidation of deficient margin accounts, and provides that:

> IF AT ANY TIME CUSTOMER'S ACCOUNT HAS INSUFFICIENT EQUITY TO MEET MARGIN REQUIREMENTS OR IS IN DEFICIT, [INTERACTIVE] HAS THE RIGHT, IN ITS SOLE DISCRETION . . . TO LIQUIDATE ALL OR ANY PART OF CUSTOMER'S POSITIONS . . . AT ANY TIME AND IN ANY MANNER AND THROUGH ANY MARKET OR DEALER, WITHOUT PRIOR NOTICE OR MARGIN CALL TO CUSTOMER.

[*Id.* § 11(D)(i)].  The Customer Agreement also required Plaintiff to meet Interactive's margin requirement as a condition of being permitted to operate a margin account and order Interactive to execute margin trades.  Specifically, the Customer Agreement provides:

> <u>Requirement to Maintain Sufficient Margin Continuously:</u>  Margin transactions are subject to initial and maintenance margin

3

> **requirements of exchanges, clearinghouses and regulators and also to any additional margin requirement of [Interactive], which may be greater ("Margin Requirements") [. . .] Customer shall monitor his, her or its account so that at all times the account contains sufficient equity to meet Margin Requirements [. . .] Customer shall maintain, without notice and demand, sufficient equity at all times to continuously meet Margin Requirements. Formulas for calculating Margin Requirements on the [Interactive] website are indicative only and may not reflect actual Margin Requirements. Customer must at all times satisfy whatever Margin Requirement is calculated by [Interactive].**

[*Id.* § 11(B) (emphasis omitted)].

Plaintiff contends that Interactive's liquidation algorithm contains a "programming error" which can actually increase, rather than decrease, a customer's margin deficiency. [Compl. ¶ 17]. According to the Plaintiff, Defendant Frank is responsible for the functioning of Interactive's liquidation algorithm.

Plaintiff alleges that he was "damaged" on account of this error, but the Complaint does not itemize or specify his losses or which liquidated positions caused him damages. The Complaint also does not identify the programing error or how that error increased his margin deficiency.

### III.   Standard of Review

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While Federal Rule of Civil Procedure 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and

4

conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.*  (quoting *Iqbal*, 556 U.S. at 679).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Id.*  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  *McCarthy v. Dun &*

5

*Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

IV. <u>Discussion</u>

a. <u>**Plaintiff Has Not Alleged A Plausible Breach of the Customer Agreement**</u>

Under Connecticut law, "[t]he elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages."  *Jolyssa Educ. Dev., LLC. v. Banco Popular, N.A.*, No. 3:11-cv-01503, 2013 WL 2047572, at *4 (D. Conn. May 14, 2013).  "[T]he interpretation and construction of a written contract present only questions of law, within the province of the court . . . so long as the contract is unambiguous and the intent of the parties can be determined from the agreement's face."  *Garbinski v. Nationwide Mut. Ins. Co.*, No. 3:10-cv-1191 (VLB), 2011 WL 3164057, at *4 (D. Conn. July 26, 2011) (*quoting Tallmadge Bros., Inc. v. Iroquois Gas Transmission Sys., L.P.*, 252 Conn. 479, 495 (Conn. 2000)).  "Contract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion."  *Id.*

Plaintiff argues that "the contract between IB and Plaintiff (and the Class) grants IB the right to auto-liquidate a margin account only to satisfy margin requirements."  [Compl. ¶ 27].  Thus, Plaintiff alleges that any single liquidation

6

trade that had the effect of worsening[1] his margin deficiency, thereby necessitating further account liquidation, is a breach of the Customer Agreement on the part of Interactive.

However, the specific sentence in the Customer Agreement cited by Plaintiff does not include the word "only," and simply provides that Interactive "is authorized to liquidate account positions in order to satisfy Margin Requirements without prior notice." [Ex. B § 11(C)]. Later, the Customer Agreement specifically states that "[i]f at any time Customer's account has insufficient equity to meet margin requirements or is in deficit, [Interactive] has the right . . . to liquidate *all or any part of Customer's positions* . . . at any time and in any manner." [*Id.* § 11(D)(i) (emphasis added)].

Thus, the Customer Agreement's plain and unambiguous language actually does not limit Interactive to the liquidation of only those trading positions that, upon liquidation, would decrease the margin deficiency. Nor is Interactive limited to liquidating only those positions that are actively contributing to the account's overall margin deficiency. On the contrary, the Customer Agreement plainly entitles Interactive to liquidate Plaintiff's *entire account*, without prior notice, upon the occurrence of a margin deficiency and imposes no duties respecting acquisitions. In fact, Interactive is entitled to liquidate part or all of Plaintiff's

---

[1] In opposition to the Motion to Dismiss, Plaintiff described one alleged "programming flaw" in further detail, arguing that Interactive's liquidation algorithm "needlessly depleted Scott's collateral by buying back positions at prices more than ten times the prices paid by other market participants during the same period." [Pl. Surrep. at 2]. This argument, however, was not included as a factual allegation in Plaintiff's Complaint, and Plaintiff did not seek to amend the Complaint to include the allegation.

7

account *even if there is no deficiency at all*, in the event that "[Interactive] deems liquidations necessary or advisable for [Interactive's] protection."  [*Id.* § 11(D)(iv)].  Finally, Interactive is also empowered to set its own margin requirements, and could have raised Plaintiff's margin requirement, thereby triggering a deficiency, at any time and without prior notice.

Thus, Plaintiff has failed to allege a breach of any specific provision of the Customer Agreement.  On the contrary, the above-cited provisions grant Interactive broad authority to manage its margin trading accounts, and courts have routinely upheld such broad authority in furtherance of the critical public policy goal of limiting broker-dealer risk exposure from margin trading.  *See, e.g.*, *Capital Options Invs., Inc. v. Goldberg Bros. Commodities, Inc.*, 958 F.2d 186, 190 (7th Cir. 1992) ("The financial integrity and the efficiency of the market require brokers to be able to anticipate the possibility of future volatility and to exercise their discretion as a matter of business judgment [concerning margin and liquidation] . . . without the fear of subsequent claims . . . ."); *In re MF Global Inc.*, 531 B.R. 424, 432, 436-37 (Bankr. S.D.N.Y. 2015) (rejecting argument that "the inconsistent and haphazard way in which [the brokerage] liquidated the positions in his account, after barring him from trading in it, created the very deficit about which it now complains"); *Morgan Stanley & Co. v. Peak Ridge Master SPC Ltd.*, 930 F. Supp. 2d 532, 541 (S.D.N.Y. 2013) ("Morgan Stanley is not required . . . to choose the most beneficial trading strategy for [its customer], as the right to liquidate is for the benefit of Morgan Stanley in protecting itself against high-risk positions."); *Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*, 794 F.

Supp. 1265, 1275 (S.D.N.Y. 1992) ("The purpose of margin call rules is to protect brokers from the risks associated with insufficiently secured accounts, and to prevent customers from carrying vast exposure in their accounts without adequate capital to cover their positions."); *Fesseha v. TD Waterhouse Investor Servs., Inc.*, 305 A.D.2d 268, 268-69 (N.Y. App. Div. 1st Dep't 2003) (affirming dismissal of contract claim where "the Customer Agreement expressly granted TD Waterhouse the right to liquidate plaintiff's positions when it deem[ed] it necessary for its protection"). Plaintiff's breach of contract claim fails to state a claim as a matter of law.

Plaintiff's argument that Interactive violated a "duty of commercial reasonableness" in executing the liquidation of deficient margin accounts also fails. Although some courts have held that a broker may not liquidate positions in a margin account in bad faith, the Complaint does not allege bad faith or intentional misconduct on the part of Interactive, but merely a "programming error," which amounts to mere negligence. [Compl. ¶ 17]. Plaintiff has not cited any authority for the proposition that a court may scrutinize individual trades conducted within the context of a broker's broad discretion to liquidate a deficient margin account in order to assess the commercial justification for each trade.

On the contrary, the only case cited by Plaintiff that directly addresses the manner of a broker's liquidation of a deficient margin account reinforces that Courts will only invade a broker's broad discretion upon evidence of bad faith. The Third Circuit in *In re Kaplan* considered the alleged wrongful liquidation of a

margin account in which the broker was alleged to have "churned" the plaintiff's account by opening new positions unrelated to liquidation. 143 F.3d 807, 817 (3d Cir. 1997). The court first noted that the defendant had broad authority, comparable to that afforded to Interactive here, including the right "to close out the Account in whole or in part," the right to liquidate "according to its judgment and discretion, at public or private sale and without notice," and to do so "whenever [defendant] deems it necessary for its protection." *Id.* at 816. Relying upon these notably "broad" contractual provisions, the court dismissed the plaintiff's claim that the defendant was not contractually authorized to liquidate the account because the plaintiff's short position in a particular stock did not pose as great a risk to the broker as initially feared when the stock's price jumped. *Id.* The court therefore rejected the very type of commercial reasonableness analysis urged by Plaintiff here. The case was remanded on the sole basis that the plaintiff also alleged that the defendant engaged in the buying and selling of "securities unrelated to positions in the account . . . [and] opened new positions that were unrelated to any pre-existing short position." *Id.* at 817. The court held that the evidence may have supported a bad faith claim on the basis of the trial court's finding that the defendant's actions were "unorthodox and possibly tainted by personal animus." *Id.* at 819.

Thus, there is no support for Plaintiff's argument that this Court should inquire into the commercial benefits and consequences of every liquidation trade conducted by Interactive or of the Defendants' liquidation algorithm as a whole. The Court declines to do so, particularly given that Interactive was contractually

authorized to liquidate Plaintiff's account *in its entirety*, without prior notice, in the event of a deficiency.  Plaintiff's breach of contract claim is DISMISSED.

### b. Plaintiff Has Not Stated A Claim for Negligence

Notwithstanding the judicial disinclination to invade a broker's broad discretion upon evidence of bad faith and the contractual nature of the party's relationship, the Court analyzes the Plaintiff's negligence claim.  Under Connecticut law, "the essential elements of a cause of action in negligence are well established:  duty; breach of that duty; causation; and actual injury."  *Traylor v. Awwa*, 899 F. Supp. 2d 216, 222 (D. Conn. 2012) (quoting *Murdock v. Croughwell*, 848 A.2d 363, 367 (Conn. 2004)).  Moreover, if a plaintiff attempts to proceed on both tort and contract causes of action, "the plaintiff must allege facts and damages sufficient to maintain those causes of action separately."  *Factory Mut. Ins. Co. v. Pike Co.*, No. 3:08-cv-01775 (VLB), 2009 WL 1939799, at *2 (D. Conn. 2009).

As between the Plaintiff and Interactive, there are no allegations giving rise to a duty to the Plaintiff other than the duties set forth in the Customer Agreement.  Therefore, Plaintiff's negligence claims against Interactive are duplicative.  *See Pike*, 2009 WL 1939799, at *2 (dismissing negligence claim where plaintiff "merely assigns the alternative label of negligence to [defendant's] alleged breach of contract").

Plaintiff's claims against Frank and the corporate parent, IBG, are even more strained.  Plaintiff alleges that the Defendants have "a common law duty to

develop, design, code, maintain, and test their software with the ordinary skill and standards expected of a professional" in the industry.  [Compl. ¶ 32].  Plaintiff does not offer a single authority in support of such a common law duty and the Court does not presume its existence.  *See Frankovitch v. Burton*, 185 Conn. 14, 20 (Conn. 1981) ("Unless some relationship exists between the person injured and the defendant, by which the latter owes a duty to the former, there can be no liability for negligence").

Even if such a duty existed, the Plaintiff has not pled a single factual allegation suggesting a breach on the part of IBG or Frank beyond the sole allegation that a "programming error" existed in the software.  The mere presence of an error in the software, even if true, is insufficient to establish that any individual or party was negligent by failing to meet Plaintiff's proposed "ordinary skill and standards expected of a professional [software developer]" test, particularly where, as here, there is no allegation that an industry standard existed.  The mere presence of an error in the software is also insufficient to establish that any particular software developer could have reasonably foreseen an injury to a specific individual customer of the developer's employer, let alone the injury alleged by this Plaintiff.

Plaintiff's negligence claims are DISMISSED.

V.      **Conclusion**

For the foregoing reasons, the Court GRANTS the Defendants' Motion to Dismiss the Amended Complaint in its entirety.  The Clerk is directed to close this file.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: September 28, 2016