## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT SCOTT BATCHELAR, | : | Case No. 3:15-cv-01836-AWT |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| INTERACTIVE BROKERS, LLC, | : | |
| INTERACTIVE BROKERS GROUP, INC., | : | |
| and THOMAS A. FRANK, | : | |
| | : | |
| Defendants. | : | July 7, 2020 |

## DEFENDANTS' AMENDED ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Defendants Interactive Brokers LLC ("Interactive"), Interactive Brokers Group, Inc., and Thomas A. Frank (collectively "Defendants") hereby answer the Second Amended Complaint and Jury Demand filed by Plaintiff Robert Scott Batchelar ("Plaintiff") on November 30, 2018 (Dkt. Entry No. 70) as follows:

1.      Denied.  Defendants further deny the allegations in footnote 1 to Paragraph 1.

2.      Denied.

3.      Admitted that at the time Plaintiff's account was liquidated on August 24, 2015, his account contained only short positions of exclusively one type of contract.  Defendants deny the remaining allegations in Paragraph 3.

4.      Denied.

5.      Denied.

6.      Paragraph 6 contains legal contentions that do not require any response.  To the extent a response is required, Defendants deny the allegations in Paragraph 6.  Plaintiff entered into a Customer Agreement with Interactive, an online brokerage firm that enables clients to

determine and place their own trades, and opened a margin account.  As of the start of trading on

August 24, 2015, Plaintiff's account consisted solely of a short position of SPX put options.

That morning, Plaintiff's account registered a margin deficit.  Accordingly, Interactive exercised

its express contractual rights under the Customer Agreement to liquidate positions in the account

to address the risk posed by the margin deficiency.  Plaintiff's conclusions are illogical and

ignore the risks of trading short put options.  The liquidation algorithm is not flawed, and all of

the liquidation trades were made on a public market and at prices within the national best bid and

offer.

     7.     Paragraph 7 contains legal contentions that do not require any response.  To the

extent a response is required, Defendants deny the allegations in Paragraph 7.

     a.     Paragraph 7(a) contains legal contentions that do not require any response.

To the extent a response is required, Defendants deny the allegations in Paragraph 7(a).

Defendants deny knowledge or information sufficient to form a belief concerning

Plaintiff's citizenship.

     b.     Paragraph 7(b) contains legal contentions that do not require any response.

To the extent a response is required, Defendants deny the allegations in Paragraph 7(b).

     c.     Paragraph 7(c) contains legal contentions that do not require any response.

To the extent a response is required, Defendants deny the allegations in Paragraph 7(c).

     d.     Paragraph 7(d) contains legal contentions that do not require any response.

To the extent a response is required, Defendants deny the allegations in Paragraph 7(d).

     8.     Defendants admit that Interactive and Interactive Brokers Group, Inc. have their

principal offices and headquarters in the District of Connecticut but deny that Thomas A. Frank

resides in this District.  The remaining allegations are legal contentions that do not require any

response; to the extent a response is required, Defendants deny the remaining allegations in Paragraph 8.

9.     Defendants admit that Plaintiff previously stated to Interactive that he resides at 67 Dunster Drive, Stow, MA 01775.  Defendants deny knowledge or information sufficient to form a belief concerning Plaintiff's current residential address, his residential address at the time he commenced this action, or his state of citizenship.

10.    Admitted (to the extent Paragraph 10 refers to Interactive Brokers LLC). Defendants add that Interactive is also a citizen of the Commonwealth of Massachusetts for purposes of determining diversity jurisdiction.

11.    Defendants deny Plaintiff's allegation that purports to identify the address for the registered agent of Defendant Interactive Brokers Group, Inc.  Defendants admit the remaining allegations in Paragraph 11.

12.    Defendants admit Thomas A. Frank is a natural person who has appeared through counsel.  Defendants deny the remaining allegations in Paragraph 12.

13.    Admitted.  Interactive is a licensed and regulated online securities and commodity futures broker.  Interactive provides electronic trade execution and clearing services to its customers.  Trading in an Interactive customer's trading account is self-directed by the customer, or if requested and authorized by the customer, by the customer's self-selected, outside independent financial advisor.  Interactive's customers (or their independent financial advisors) decide on their investment strategy (without solicitation or advice from Interactive) and send their trading orders to Interactive over the internet.  Interactive does not provide financial, investment, or trading advice to its customers.

14.    Admitted.

15.    Admitted.

16.    Denied, except Defendants admit that margin may allow additional leverage in a brokerage account, that margin is monitored by Interactive, and that when Plaintiff opened his online trading account at Interactive, he specifically requested the ability to trade on margin.

17.    Admitted, insofar as Interactive operates proprietary software through which customers' orders generally are routed to various market centers, including exchanges.

18.    Denied, except Defendants admit that Interactive offers to the public, and provides to its customers, low-cost brokerage services.

19.    Denied, except Defendants admit that Interactive markets itself as an online brokerage firm that allows its customers to decide on their own investment strategy and allows qualified customers to open margin accounts.

20.    Admitted that there is a contract between Plaintiff and Interactive and that there is no contract between Plaintiff and either Defendant Interactive Brokers Group, Inc. or Defendant Thomas A. Frank.  Defendants deny the remaining allegations in Paragraph 20.

21.    Denied, except Defendants admit that Plaintiff was an Interactive customer with a non-discretionary account.  Interactive denies that it took control over Plaintiff's account. Plaintiff's account was liquidated on August 24, 2015, after he failed to add more value to the account to prevent or cure his margin deficit.  In accordance with federal law, exchange rules, and the brokerage account agreements, Interactive addressed the margin deficit by submitting closing trades on a public exchange—in other words, Interactive "liquidated" the trading position in Plaintiff's account and converted it to cash.

22.    Denied.  Interactive is authorized to liquidate positions in a customer's account when the customer fails to prevent or cure a margin deficit.  For example, Plaintiff has admitted

that his "account registered a margin deficit on the morning of August 24, 2015." Dkt. No. 32 at 11. This failure to maintain adequate account equity was a breach of Plaintiff's contractual duty to monitor his account and maintain sufficient equity to meet margin requirements. No liquidation would have occurred had Plaintiff met this obligation. Plaintiff did not satisfy his margin requirement, did not cure his margin deficit, and did not meet his obligation to add funds to the account to cure the account deficit.

23.    Denied.

24.    Admitted.

25.    Admitted.

26.    Denied, except Defendants admit that for transactions to close the short SPX put option position held by Plaintiff, the lower the costs for the closing trades, the better off Plaintiff would be.

27.    Paragraph 27 describes definitions that Plaintiff uses in his Second Amended Complaint, which Defendants do not adopt, and does not include any allegations that require a response. To the extent a response is required, Defendants deny the allegations in Paragraph 27.

28.    Admitted that Defendants Interactive and Interactive Brokers Group, Inc. develop their core software technology internally and generally do not rely on outside vendors for software development or maintenance. Admitted that Defendants Interactive and Interactive Brokers Group, Inc. continuously rewrite and upgrade their software. Defendants respectfully refer the Court to Interactive's and Interactive Brokers Group, Inc.'s statements regarding their technology, which speak for themselves, for their full content.

29.     Admitted that Defendants Interactive and Interactive Brokers Group, Inc. have a steering committee of senior executives that track progress on programming initiatives generally on a regular basis.  Defendants deny the remaining allegations in Paragraph 29.

30.     Denied, except Defendants admit that various people were responsible for aspects of the development or coding of the auto-liquidation software used to liquidate Plaintiff's account, and that some such individuals reported directly or indirectly to Thomas A. Frank in August 2015.

31.     Defendants respectfully refer the Court to the documents described in Paragraph 31 that Interactive Brokers Group, Inc. files publicly with the Securities & Exchange Commission ("SEC"), including Forms 10-K, 424B5, and ARS, which speak for themselves, and otherwise deny Plaintiff's allegations in Paragraph 31.

32.     Defendants refer the Court to Defendant Interactive Brokers Group, Inc.'s publicly-filed Form 10-Ks for the fiscal years 2007 through 2018, which speak for themselves, for their full content, and otherwise deny Plaintiff's allegations in Paragraph 32.

33.     Defendants refer the Court to Defendant Interactive Brokers Group, Inc.'s publicly-filed Form 10-Ks for the fiscal years 2007 through 2018 and accompanying exhibits, which speak for themselves, for their full content, and otherwise deny Plaintiff's allegations in Paragraph 33.

34.     Denied.  Defendants refer the Court to the referenced website page for its contents, which speak for themselves.

35.     Admitted that Plaintiff's margin account was liquidated by Interactive. Defendants deny the remaining allegations in Paragraph 35, including the allegations incorporated by reference to Paragraphs 55-62.

6

36.     Admitted that Interactive determined that Plaintiff's account had a margin deficit on August 24, 2015.  As Plaintiff has stated, his "account registered a margin deficit on the morning of August 24, 2015."  Dkt. No. 32 at 11.  Defendants deny the remaining allegations in Paragraph 36, including the allegations incorporated by reference to Paragraphs 55-62.

37.     Denied, except Defendants admit that software determines if an account's equity value has fallen below the relevant margin requirements.  When that occurs, the account is in "margin deficit," is in violation of its margin requirements under FINRA rules and federal law, and is subject to immediate liquidation.

38.     Denied, except Defendants admit that software determines if an account's equity value has fallen below the relevant margin requirements.  When that occurs, the account is in "margin deficit," is in violation of its margin requirements under FINRA rules and federal law, and is subject to immediate liquidation.

39.     Denied, except Defendants admit that margin deficiencies and margin calls are contemplated by regulations.  Failure to maintain adequate account equity is a breach of the customer's duty to monitor a brokerage account and maintain sufficient equity to meet margin requirements.

40.     Admitted that Plaintiff accurately quotes a portion of Section 11(D)(i) of the Customer Agreement, except for the emphasis and alterations that Plaintiff added, and without the capitalization used in the Customer Agreement.  Defendants respectfully refer the Court to the Customer Agreement, which is in the record and speaks for itself.  Defendants deny the remaining allegations in Paragraph 40.

41.     Denied.

42.     Denied.

7

43.     Denied.

44.     Defendants admit that no human conducted the liquidation trades in Plaintiff's account on August 24, 2015.  Defendants deny the remaining allegations in Paragraph 44, including the allegations incorporated by reference to Paragraphs 55-62, 66, 69-77, and Exhibit A to Plaintiff's Second Amended Complaint.

45.     Denied, except Defendants admit that during the liquidation of an account to address a margin violation, Interactive's system cancels pending trade orders and prevents the customer from submitting trade orders that worsen or do not address the margin violation.

46.     Denied, except Defendants admit that during the liquidation of an account to address a margin violation, Interactive's system cancels pending trade orders and prevents the customer from submitting trade orders that worsen or do not address the margin violation.

47.     Denied.

48.     Defendants deny that "The exact time of the trades is charted on Exhibit A, attached hereto and incorporated herein by reference" and note that on August 24, 2015, Plaintiff's account consisted solely of a short position of SPX put options.  Defendants admit the remaining allegations in Paragraph 48.

49.     Denied.

50.     Paragraph 50 contains allegations about the parties' rights and obligations under Regulation T and FINRA Rule 4210, which are legal contentions that do not require any response.  To the extent a response is required, Defendants deny the allegations in Paragraph 50.

51.     Paragraph 51 contains legal contentions that do not require any response.  To the extent a response is required, Defendants refer the Court to FINRA Rule 4210(g)(10) and 12 C.F.R. § 220.4(c)(1), which speak for themselves, for their full contents.

52.     Interactive admits that it had the right, but did not have a contractual or regulatory obligation, to liquidate Plaintiff's account on August 24, 2015, and admits that it decided how to design and implement its margin systems.  Defendants deny the remaining allegations in Paragraph 52.

53.     Denied, except Defendants admit that during an automatic liquidation, software operated by Interactive's systems executes trades in customers' accounts in order to address margin violations.

54.     Defendants admit that Plaintiff's account was in margin deficit on the morning of August 24, 2015, and that Interactive liquidated Plaintiff's account by purchasing option contracts that closed out Plaintiff's short position in those option contracts.  Defendants deny the remaining allegations in Paragraph 54.

55.     Defendants deny the allegations in Paragraph 55, except admit that Plaintiff's account was liquidated on August 24, 2015, and that the precise details of the liquidation are reflected in the documents previously produced by Defendants to Plaintiff during discovery in this action.

56.     Defendants admit that Plaintiff's account was liquidated on August 24, 2015, that the precise details of the liquidation are reflected in the documents previously produced by Defendants to Plaintiff during discovery in this action, that the highest price at which a trade was executed during the liquidation of Plaintiff's account on August 24, 2015, was $83.40 per contract, and that a lower trade price, if available, would have resulted in a lower debt for Interactive.  Defendants deny the remaining allegations in Paragraph 56, including the allegations incorporated by reference to Paragraphs 55-62, 66, 69-76, and Exhibit A to Plaintiff's Second Amended Complaint.

9

57.     Denied.

58.     Defendants have insufficient information to admit or deny the allegations in Paragraph 58, and Defendants therefore deny the allegations in Paragraph 58.

59.     Denied.

60.     Defendants have insufficient information to admit or deny the allegations in Paragraph 60, and Defendants therefore deny the allegations in Paragraph 60.

61.     Denied.

62.     Denied.

63.     Defendants respectfully refer the Court to the complaint made, but deny the allegations set forth in Paragraph 63.

64.     Denied.

65.     Admitted that Defendants have never made the claim described by Plaintiff in the first sentence of Paragraph 65, but Defendants deny any assertions implied by Plaintiff in that sentence.  Interactive exercised its express contractual rights under the Customer Agreement to liquidate positions in Plaintiff's account to address the risk posed by the margin deficiency. Defendants deny the remaining allegations in Paragraph 65.

66.     Denied.

67.     Admitted that the software that Interactive uses to liquidate customer accounts upon margin deficit is within the possession and control of Interactive; the software has been made available to Plaintiff for review since July 30, 2019.  Defendants deny the remaining allegations in Paragraph 67.

68.     Defendants have insufficient information to admit or deny the allegations about the information and documents to which Plaintiff and "Plaintiff's experts" have access, and

Defendants therefore deny the allegations in Paragraph 68.  As stated above, the software has been made available to Plaintiff for review since July 30, 2019.

69.      The allegations in Paragraph 69 are legal contentions that do not require any response.  To the extent a response is required, Defendants deny the allegations in Paragraph 69.

70.      Denied.

71.      Denied.

72.      Denied.

73.      Denied.

74.      Denied.  Defendants further deny the allegations in footnote 3 to Paragraph 74.

75.      Denied.  Defendants further deny the allegations in footnote 4 to Paragraph 75.

76.      Denied.

77.      Denied.

78.      Denied.

79.      Defendants have insufficient information to admit or deny the supposed "third-party market price[s]" that Plaintiff alleges in Paragraph 79, and Defendants therefore deny the allegations in Paragraph 79.  Plaintiff was not damaged by Defendants.

80.      Denied.

81.      Denied.

82.      Denied.

83.      Admitted that Defendants have never made the claim described by Plaintiff in Paragraph 83, but Defendants deny any assertions implied by Plaintiff in the paragraph.  Interactive exercised its express contractual rights under the Customer Agreement to liquidate positions in the account to address the risk posed by the margin deficiency.

84.     Defendants admit that Defendants have access to Interactive's records of Plaintiff's trading at Interactive, the records of the liquidation of Plaintiff's account at Interactive, and the records of Plaintiff's complaint to Interactive about the liquidation of his account.  Defendants deny the remaining allegations in Paragraph 84.

85.     Denied.

86.     Admitted that the software is designed, coded, developed, tested, and maintained through various employees of Interactive, some of whom directly or indirectly report to Thomas A. Frank.

87.     Admitted that Defendant Thomas A. Frank is the Chief Information Officer and Executive Vice President of Defendant Interactive Brokers Group, Inc.  Defendants deny the remaining allegations in Paragraph 87.  Various people were responsible for aspects of the development or coding of the auto-liquidation software used to liquidate Plaintiff's account, and some such individuals reported directly or indirectly to Thomas A. Frank in August 2015.

88.     Admitted that Defendant Thomas A. Frank knew at the time Plaintiff's account was liquidated that Interactive used software in a number of ways, including to liquidate customers' margin accounts to address margin violations.  Defendants deny the remaining allegations in Paragraph 88.

89.     Denied.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Denied.

94.     Denied.

95.     Denied, except Defendants admit that the software used to liquidate Plaintiff's account was in the exclusive custody and control of Defendants Interactive Brokers Group, Inc. and Interactive at the time of the liquidation on August 24, 2015.

96.     Denied.  To the extent Plaintiff relies on the Summary Order dated September 26, 2018, issued in this case by the United States Court of Appeals for the Second Circuit (the "Summary Order"), Defendants refer the Court to the full contents of that Summary Order, which speaks for itself, and deny Plaintiff's characterization of the Summary Order.

97.     Paragraph 97 does not set forth any contentions for Defendants to admit or deny; thus, no response is required.

98.     Denied.  To the extent Plaintiff relies on the Summary Order, Defendants refer the Court to the full contents of that Summary Order, which speaks for itself, and deny Plaintiff's characterization of the Summary Order.

99.     Denied.  Interactive performed all of its obligations to Plaintiff.

100.     The allegations in Paragraph 100 are legal contentions that do not require any response.  To the extent a response is required, Defendants deny the allegations in Paragraph 100.

101.     The allegations in Paragraph 101 are legal contentions that do not require any response.  To the extent a response is required, Defendants deny the allegations in Paragraph 101.

102.     The allegations in Paragraph 102 are legal contentions that do not require any response.  To the extent a response is required, Defendants deny the allegations in Paragraph 102.  To the extent Plaintiff relies on the Summary Order, Defendants refer the Court to the full

contents of that Summary Order, which speaks for itself, and deny Plaintiff's characterization of the Summary Order.

103. The allegations in Paragraph 103 are legal contentions that do not require any response. To the extent a response is required, Defendants deny the allegations in Paragraph 103. To the extent Plaintiff relies on the Summary Order, Defendants refer the Court to the full contents of that Summary Order, which speaks for itself, and deny Plaintiff's characterization of the Summary Order.

104. Denied, except that Defendants admit that the organizations that Plaintiff identifies in Paragraph 104 publish software standards, although Defendants do not admit that such standards have any legal relevance to this action.

105. The allegations in Paragraph 105 are legal contentions that do not require any response. To the extent a response is required, Defendants deny the allegations in Paragraph 105.

106. Admitted, except that Defendants do not admit that the best practices identified by Plaintiff in Paragraph 106 have any legal relevance to this action.

107. The allegations in Paragraph 107 are legal contentions that do not require any response. To the extent a response is required, Defendants deny the allegations in Paragraph 107.

108. Admitted that Interactive has a procedure for trade errors and that exchanges have procedures and rules for seeking rescission or adjustment of trades. Defendants have insufficient information to admit or deny the remaining allegations concerning the policies and procedures of "all" other brokers; thus, Defendants deny the remaining allegations in Paragraph 108.

109. Denied.

110.    The allegations in Paragraph 110 are legal contentions that do not require any response.  To the extent a response is required, Defendants state that the Second Amended Complaint speaks for itself as to Plaintiff's request, and deny that Plaintiff has any right to the declaratory relief requested in Paragraph 110.

111.    The allegations in Paragraph 111 are legal contentions that do not require any response.  To the extent a response is required, Defendants state that the Second Amended Complaint speaks for itself as to Plaintiff's request, deny the allegations set forth in Paragraph 111, and deny that Plaintiff has any right to the injunctive relief requested in Paragraph 111.

112.    The allegations in Paragraph 112 are legal contentions that do not require any response.  To the extent a response is required, Defendants state that the Second Amended Complaint speaks for itself as to Plaintiff's class allegations, and deny that Plaintiff may proceed as representative of the proposed class.

113.    The allegations in Paragraph 113 are legal contentions that do not require any response.  To the extent a response is required, Defendants state that the Second Amended Complaint speaks for itself as to Plaintiff's class allegations, and deny that the proposed class may be certified.

114.    The allegations in Paragraph 114 are legal contentions that do not require any response.  To the extent a response is required, Defendants state that the Second Amended Complaint speaks for itself as to Plaintiff's class allegations, and deny that the proposed class may be certified.

A.    The allegations in Paragraph 114A are legal contentions that do not require any response.  To the extent a response is required, Defendants state that the

Second Amended Complaint speaks for itself as to Plaintiff's class allegations, and deny that the proposed class may be certified.

     B.     The allegations in Paragraph 114B are legal contentions that do not require any response.  To the extent a response is required, Defendants state that the Second Amended Complaint speaks for itself as to Plaintiff's class allegations, and deny that the proposed class may be certified.

     C.     The allegations in Paragraph 114C are legal contentions that do not require any response.  To the extent a response is required, Defendants state that the Second Amended Complaint speaks for itself as to Plaintiff's class allegations, and deny that the proposed class may be certified.

     D.     The allegations in Paragraph 114D are legal contentions that do not require any response.  To the extent a response is required, Defendants state that the Second Amended Complaint speaks for itself as to Plaintiff's class allegations, and deny that the proposed class may be certified.

     E.     The allegations in Paragraph 114E are legal contentions that do not require any response.  To the extent a response is required, Defendants state that the Second Amended Complaint speaks for itself as to Plaintiff's class allegations, and deny that the proposed class may be certified.

     F.     The allegations in Paragraph 114F are legal contentions that do not require any response.  To the extent a response is required, Defendants state that the Second Amended Complaint speaks for itself as to Plaintiff's class allegations, and deny that the proposed class may be certified.

G.      The allegations in Paragraph 114G are legal contentions that do not require any response.  To the extent a response is required, Defendants state that the Second Amended Complaint speaks for itself as to Plaintiff's class allegations, and deny that the proposed class may be certified.

H.      The allegations in Paragraph 114H are legal contentions that do not require any response.  To the extent a response is required, Defendants state that the Second Amended Complaint speaks for itself as to Plaintiff's class allegations, and deny that the proposed class may be certified.

115.    The allegations in Paragraph 115 are legal contentions that do not require any response.  To the extent a response is required, Defendants deny the allegations in Paragraph 115.

116.    The allegations in Paragraph 116 are legal contentions that do not require any response.  To the extent a response is required, Defendants deny the allegations in Paragraph 116.

117.    The allegations in Paragraph 117 are legal contentions that do not require any response.  To the extent a response is required, Defendants deny the allegations in Paragraph 117.

118.    The allegations in Paragraph 118 are legal contentions that do not require any response.  To the extent a response is required, Defendants deny the allegations in Paragraph 118.

A.      Defendants have insufficient information to admit or deny the allegations in Paragraph 118A, and Defendants therefore deny the allegations in Paragraph 118A.

B.      Defendants have insufficient information to admit or deny the allegations in Paragraph 118B, and Defendants therefore deny the allegations in Paragraph 118B.

C.      Defendants have insufficient information to admit or deny the allegations in Paragraph 118C, and Defendants therefore deny the allegations in Paragraph 118C.

D.      Defendants have insufficient information to admit or deny the allegations in Paragraph 118D, and Defendants therefore deny the allegations in Paragraph 118D.

E.      Defendants have insufficient information to admit or deny the allegations in Paragraph 118E, and Defendants therefore deny the allegations in Paragraph 118E.

119.    The allegations in Paragraph 119 are legal contentions that do not require any response.  To the extent a response is required, Defendants deny the allegations in Paragraph 119.

A.      The allegations in Paragraph 119A are legal contentions that do not require any response.  To the extent a response is required, Defendants deny the allegations in Paragraph 119A.

B.      Admitted that as of the date of this Answer, there are no other pending certified class actions concerning the controversy at issue or the claims asserted in this case applicable to the Plaintiff or the putative class members set forth against Defendants in Plaintiff's Second Amended Complaint.

C.      The allegations in Paragraph 119C are legal contentions that do not require any response.  To the extent a response is required, Defendants deny the allegations in Paragraph 119C.

D.     The allegations in Paragraph 119D are legal contentions that do not require any response.  To the extent a response is required, Defendants deny the allegations in Paragraph 119D.

E.     The allegations in Paragraph 119E are legal contentions that do not require any response.  To the extent a response is required, Defendants deny the allegations in Paragraph 119E.

120.   The allegations in Paragraph 120 are legal contentions that do not require any response.  To the extent a response is required, Defendants deny the allegations in Paragraph 120.

## DEFENDANTS' RESPONSE TO PLAINTIFF'S "PRAYER"

1.     Defendants request that the Court deny Plaintiff's prayer "[f]or judgment for all losses and damages that have been, or will be, sustained."

2.     Defendants request that the Court deny Plaintiff's prayer for "[a]ctual damages."

3.     Defendants request that the Court deny Plaintiff's prayer "[f]or reasonable attorneys' fees and costs."

4.     Defendants request that the Court deny Plaintiff's prayer "[f]or the requested declaration."

5.     Defendants request that the Court deny Plaintiff's prayer "[f]or the requested injunctive relief."

6.     Defendants request that the Court deny Plaintiff's prayer "[f]or such other and further relief and the Court deems just and equitable."

7.     Defendants request that the Court deny Plaintiff's demand for "trial by jury."

8.      Defendants request that the Court enter a judgment dismissing Plaintiff's Second Amended Complaint in its entirety.

## **AFFIRMATIVE DEFENSES**

1.      Plaintiff's Second Amended Complaint should be dismissed in favor of arbitration, and the Court should enter an order compelling Plaintiff to arbitrate this action, pursuant to the arbitration agreement in Section 33 of the Customer Agreement between Plaintiff and Interactive.

2.      Plaintiff's Second Amended Complaint should be dismissed for lack of subject matter jurisdiction because there was no diversity of citizenship between Plaintiff and Defendant Thomas A. Frank or Defendant Interactive at the time Plaintiff commenced this action, and because Plaintiff cannot demonstrate that the jurisdictional requirements of the Class Action Fairness Act are satisfied.  Specifically, as of December 18, 2015, when Plaintiff commenced this action, for purposes of diversity jurisdiction: (a) Defendant Interactive was a citizen of Massachusetts, among other states; (b) Defendant Interactive Brokers Group, Inc. was a citizen of Connecticut and Delaware; and (c) Defendant Thomas A. Frank was a citizen of Massachusetts.

3.      Defendants' actions were not the proximate cause of any of Plaintiff's financial losses or any other damages alleged.

4.      Some or all of the damages that Plaintiff seeks are barred by the doctrine(s) of contributory negligence, comparative negligence, and/or comparative fault.

5.      Plaintiff has waived his right to collect some or all of the damages he seeks pursuant to Section 27 of the Customer Agreement.

6.     Plaintiff's claims are barred by the limitation of liability provisions and warranty disclaimers that Plaintiff agreed to in the Customer Agreement.

7.     Plaintiff did not satisfy his margin requirements, did not cure his margin deficit, and did not meet his obligation to add funds to the account to cure the account deficit.  Thus, Plaintiff was in default of his obligations and is barred from recovery in this action.

8.     Plaintiff is responsible for his own loss because he engaged in self-directed trading.

9.     Plaintiff is responsible for his own loss because he entered into the Customer Agreement and authorized Interactive to liquidate positions in his account, at Interactive's discretion and in any manner Interactive chooses, without providing notice to Plaintiff, should Plaintiff's account fail to comply with applicable margin requirements.

10.    Plaintiff agreed when he entered into the Customer Agreement to be liable for all losses associated with liquidations in his account and agreed to hold Interactive harmless for all losses and costs associated with liquidations.

11.    Interactive has incurred damages due to Plaintiff's conduct, and any damages owed by Defendants are offset by the amounts owed by Plaintiff to Interactive.

## COUNTERCLAIM BY DEFENDANT INTERACTIVE BROKERS LLC

**(By Interactive Brokers LLC Against Robert Scott Batchelar for Declaratory Relief)**

1.     Interactive Brokers LLC (hereinafter "Interactive") asserts a counterclaim for breach of contract against Robert Scott Batchelar (hereinafter "Batchelar") to collect a current unpaid negative balance in his margin account of (-) $75,244.88, inclusive of unpaid fees and charges, which Batchelar owes to Interactive pursuant to the Customer Agreement between

them.  Interactive seeks a judgment declaring the mandatory arbitration provisions of the Customer Agreement valid and enforceable and compelling Batchelar to arbitrate this counterclaim.

### Parties

2.      Defendant-Counterclaim Plaintiff Interactive Brokers LLC is a limited liability company formed in the State of Connecticut with its principal place of business at One Pickwick Plaza, Greenwich, Connecticut 06830.  One of Interactive Brokers LLC's states of citizenship is the Commonwealth of Massachusetts.

3.      Plaintiff-Counterclaim Defendant Robert Scott Batchelar is an individual and a former customer of Interactive.  Batchelar has alleged that he is a citizen of the Commonwealth of Massachusetts.

### Jurisdiction and Venue

4.      If the Court exercises jurisdiction over Plaintiff's claim pursuant to the Class Action Fairness Act, then the Court has jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1367, the doctrine of pendent jurisdiction, and 28 U.S.C. § 2201.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this counterclaim occurred in the District of Connecticut and because Batchelar agreed in Section 32(A) of his Customer Agreement with Interactive that "Courts of Connecticut shall have exclusive jurisdiction over disputes relating to this Agreement, except when arbitration is provided."

### Statement of Facts

6.      Batchelar entered into a Customer Agreement with Interactive that governed the relationship between Batchelar and Interactive, including, among other things, Batchelar's and

Interactive's respective rights and obligations related to Batchelar's margin account with Interactive.

7.      Batchelar electronically signed the Customer Agreement on or about August 19, 2011.

8.      The Customer Agreement is a binding and enforceable contract between Batchelar and Interactive.

9.      As part of the Customer Agreement, Batchelar agreed that: (i) it is his obligation to monitor his account and ensure that applicable margin requirements are met at all times, and (ii) if his account falls below its margin requirements, Interactive has the right (in its sole discretion) to liquidate any and all positions in his account immediately, without notice or margin call.

10.     Specifically, Section 11(B) of the Customer Agreement states:

> **<u>Requirement to Maintain Sufficient Margin Continuously:</u>**
> Margin transactions are subject to initial and maintenance margin requirements of exchanges, clearinghouses and regulators and also to any additional margin requirement of IB, which may be greater ("Margin Requirements").  **IB MAY MODIFY MARGIN REQUIREMENTS FOR ANY OR ALL CUSTOMERS FOR ANY OPEN OR NEW POSITIONS AT ANY TIME, IN IB'S SOLE DISCRETION.**  Customer shall monitor his, her or its account so that at all times the account contains sufficient equity to meet Margin Requirements.  IB may reject any order if the account has insufficient equity to meet Margin Requirements, and may delay processing any order while determining margin status. Customer shall maintain, without notice or demand, sufficient equity at all times to continuously meet Margin Requirements. Formulas for calculating Margin Requirements on the IB website are indicative only and may not reflect actual Margin Requirements.  Customer must at all times satisfy whatever Margin Requirement is calculated by IB.

(Emphasis in original.)[1]

11.    As part of the Customer Agreement, Batchelar expressly agreed that Interactive did not have an obligation to issue margin calls prior to liquidating positions in his account, and he also agreed that Interactive was authorized to liquidate account positions, without notice, to satisfy margin requirements for his account:

> **IB Will Not Issue Margin Calls:** **IB does not have to notify Customer of any failure to meet Margin Requirements prior to IB exercising its rights under this Agreement.  Customer acknowledges that IB generally will not issue margin calls; generally will not credit Customer's account to meet intraday or overnight margin deficiencies; and is authorized to liquidate account positions in order to satisfy Margin Requirements without prior notice.**

Section 11(C) of the Customer Agreement (emphasis in original).

12.    Batchelar further agreed that Interactive would have sole discretion to decide whether and how to liquidate his margin account.  Section 11(D)(i) of the Customer Agreement states:

> **IF AT ANY TIME CUSTOMER'S ACCOUNT HAS INSUFFICIENT EQUITY TO MEET MARGIN REQUIREMENTS OR IS IN DEFICIT, IB HAS THE RIGHT, IN ITS SOLE DISCRETION, BUT NOT THE OBLIGATION, TO LIQUIDATE ALL OR ANY PART OF CUSTOMER'S POSITIONS IN ANY OF CUSTOMER'S IB ACCOUNTS, INDIVIDUAL OR JOINT, AT ANY TIME AND IN ANY MANNER AND THROUGH ANY MARKET OR DEALER, WITHOUT PRIOR NOTICE OR MARGIN CALL TO CUSTOMER.  CUSTOMER SHALL BE LIABLE AND WILL PROMPTLY PAY IB FOR ANY DEFICIENCIES IN CUSTOMER'S ACCOUNT THAT ARISE FROM SUCH LIQUIDATION OR REMAIN AFTER SUCH LIQUIDATION.  IB HAS NO LIABILITY FOR ANY LOSS SUSTAINED BY CUSTOMER IN CONNECTION WITH SUCH LIQUIDATIONS (OR IF THE IB SYSTEM DELAYS**

---

[1]    The term "IB" as used in the Customer Agreement and the *Disclosure of Risks of Margin Trading* refers to Defendant-Counterclaim Plaintiff Interactive Brokers LLC.

**EFFECTING, OR DOES NOT EFFECT, SUCH
LIQUIDATIONS) EVEN IF CUSTOMER RE-
ESTABLISHES ITS POSITION AT A WORSE PRICE.**

(Emphasis in original).

13.     As described in Section 11(D)(i) of the Customer Agreement, Batchelar agreed

that he would be liable for any deficiency in his margin account after a liquidation.

14.     Furthermore, Section 11(A) of the Customer Agreement states, "<u>**Risk of Margin**</u>

<u>**Trading:**</u> **Margin trading is highly risky and may result in a loss of funds greater than**

**Customer has deposited in the account.  Customer represents that he or she has read the**

**'Disclosure of Risks of Margin Trading' provided separately by IB.**"  (Emphasis in original.)

15.     Batchelar received the *Disclosure of Risks of Margin Trading* referenced in

Section 11(A) of the Customer Agreement.

16.     The *Disclosure of Risks of Margin Trading* includes the following warning:

> When you purchase securities, you may pay for the securities in
> full or you may borrow part of the purchase price from IB.  If you
> choose to borrow funds from IB, you will open a margin account
> with the firm.  The securities purchased are IB's collateral for the
> loan to you.  If the securities or futures contracts in your account
> decline in value, so does the value of the collateral supporting your
> loan, and, as a result, IB can take action, such as sell securities or
> other assets in any of your accounts held with IB or issue a margin
> call, in order to maintain the required equity in the account.

17.     In addition, Section 33 of the Customer Agreement, entitled "<u>**Mandatory**</u>

<u>**Arbitration,**</u>" provides in part, "**ALL PARTIES TO THIS AGREEMENT ARE GIVING UP**

**THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A**

**TRIAL BY JURY, EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION**

**FORUM IN WHICH A CLAIM IS FILED.**"  (Emphasis in original.)  The remainder of

Batchelar's and Interactive's arbitration agreement is contained in Section 33 of the Customer

Agreement.

18.     On August 24, 2015, Batchelar failed to ensure that his margin account was in compliance with all applicable margin requirements that existed as of that time.

19.     Batchelar was logged into his margin account with Interactive on the morning of August 24, 2015, prior to the time when Interactive liquidated his margin account.

20.     Interactive sent Batchelar an electronic notification indicating that his margin account was not in compliance with the then-existing margin requirements for the account.

21.     Batchelar did not add any assets or liquidate any positions in his margin account to bring it into compliance with the then-existing margin requirements for the account.

22.     To address the margin violation in Batchelar's margin account, Interactive liquidated the account pursuant to the terms of the Customer Agreement and as allowed by law.

23.     As a result of this liquidation, Batchelar's margin account currently has a negative balance of (-) $75,244.88, which he owes to Interactive.

24.     Batchelar has not paid Interactive any portion of the negative balance referenced above.

25.     Batchelar explicitly agreed, as part of the Customer Agreement, to reimburse Interactive for the cost, including attorneys' fees, of collecting any negative balance in his margin account.  In particular, Batchelar agreed as follows:

> **Account Deficits:** If a cash account incurs a deficit, margin interest rates will apply until the balance is repaid, and IB has the right, but not the obligation, to treat the account as a margin account. **Customer agrees to pay reasonable costs of collection for any unpaid Customer deficit, including attorneys' and collection agent fees.**

Section 22 of the Customer Agreement (emphasis in original).

## COUNTERCLAIM COUNT I

**(Declaratory Relief or, Alternatively, Breach of Contract Seeking Damages)**

26.　　Interactive re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 25 of this counterclaim as if fully included herein.

27.　　The Customer Agreement is a valid and binding contract between Interactive and Batchelar.

28.　　Interactive fully performed all of its obligations under the Customer Agreement, including its obligations as of the time it liquidated Batchelar's margin account on August 24, 2015.

29.　　Batchelar breached the Customer Agreement by failing to comply with all applicable margin requirements on August 24, 2015, and by failing to repay the negative balance of (-) $75,244.88 in his margin account that resulted from the liquidation of his account and subsequent unpaid fees and charges.

30.　　As a result of Batchelar's breach of the Customer Agreement, Interactive has suffered damages in at least the amount of $75,244.88, plus interest and attorneys' fees.

31.　　Batchelar and Interactive agreed as part of the Customer Agreement to arbitrate all disputes between them.

WHEREFORE, Interactive demands entry of judgment as follows:

32.　　A declaratory judgment (i) stating that the mandatory arbitration agreement in the Customer Agreement is valid and enforceable; (ii) compelling the parties to arbitrate Interactive's counterclaim for breach of contract; and (iii) granting such other relief as the Court deems just and proper.

33.     As an alternative to a declaratory judgment, and only if the merits of the claims alleged in Batchelar's Second Amended Complaint are litigated in this Court, and without waiver of the mandatory arbitration provision of the Customer Agreement, Interactive requests:

      a.      Compensatory damages in the amount of $75,244.88;

      b.      Prejudgment interest;

      c.      Attorneys' fees, costs, and disbursements; and

      d.      Such other relief as the Court deems just and proper.

Respectfully submitted,

By: */s/ Gary J. Mennitt*
    Gary J. Mennitt (CT29948)
    DECHERT LLP
    1095 Avenue of the Americas
    New York, New York 10036
    Phone:  (212) 698-3500
    Fax: (212) 698-3599
    E-mail:  gary.mennitt@dechert.com

    Thomas D. Goldberg (CT04386)
    Andraya Pulaski Brunau (CT29715)
    DAY PITNEY LLP
    242 Trumbull Street
    Hartford, CT 06103
    Phone: (860) 275-0100
    Fax:  (860) 275-0343
    E-mail:  tgoldberg@daypitney.com
    E-mail:  abrunau@daypitney.com

*Attorneys for Defendants Interactive Brokers LLC, Interactive Brokers Group, Inc., and Thomas A. Frank*

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on July 7, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                          */s/ Gary J. Mennitt*
                             Gary J. Mennitt (CT29948)